**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIANA ARNOLD,<br><br>Plaintiff,<br><br>v.<br><br>POINT MANAGEMENT LLC,<br>originally named as<br>Shangri La Columbia LLC,<br><br>Defendant. | ) | CASE NO. 1:25-CV-00521<br><br>JUDGE DAVID A. RUIZ<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

## I. Introduction

Plaintiff Briana Arnold filed a Complaint raising the following claims: (1) race discrimination in violation of Title VII; (2) race discrimination in violation of Ohio Revised Code ("O.R.C.") § 4112.01 *et seq.*; (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (4) failure to accommodate in violation of the ADA; (5) disability discrimination in violation of O.R.C. § 4112.01 *et seq.*; (6) failure to accommodate in violation of O.R.C. § 4112.01 *et seq.*; (7) gender discrimination in violation of Title VII; (8) gender discrimination in violation of O.R.C. § 4112.01 *et seq.*; (9) retaliation in violation of Title VII; (10) retaliation in violation of the ADA; and, (11) retaliation in violation of O.R.C. § 4112.01 *et seq*. (R. 1).

Defendant Point Management. LLC filed a Motion for Dismiss for failure to state a claim. (R. 9). Plaintiff filed a brief in opposition, and Defendant filed a reply in support of its motion. (R. 10 & 11). For the reasons stated below, the Court GRANTS Defendant's Motion to Dismiss (R. 9).

## II. Rule 12(b)(6) Standard

When ruling upon a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a court must accept as true all the factual allegations contained in the complaint. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *accord Streater v. Cox*, 336 Fed. App'x 470, 474 (6th Cir. 2009). Nevertheless, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). The Supreme Court has explained as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). **A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."** 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. **Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."** *Id*., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis added)).

In determining whether a complaint is sufficient under the standards of *Iqbal* and *Twombly*, it may behoove a court to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Weeding out bare or "naked assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations allows the Court to address whether the remaining allegations—those well-pleaded allegations of factual matter—allow a plaintiff to reach his or her goal of reaching the plausibility level where an entitlement to relief may begin. A court "is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims." *Doe v. Toys R Us*, No. 10 CV 2116, 2010 U.S. Dist. LEXIS 79916, at *5-6 (N.D. Ill. Aug. 5, 2010) (*citing Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992)). "Plaintiff's own 'subjective beliefs as to the motivation of others are insufficient' to meet his burden" to plead a plausible cause of action. *Mahmood Husam Altabra v. Univ. of Tex. at Austin*, 2024 U.S. Dist. LEXIS 41380, at *17 (W.D. Tex. Mar. 7, 2024) (*citing Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022)).

## III. Factual Allegations

Herein, the Complaint is replete with naked assertions, labels and conclusory language. The Complaint offers few factual allegations. Where an allegation amounts to nothing more than a bare assertion, the Court identifies it as such.

Plaintiff began working for Defendant as a Patient Consultant on or about August 16, 2024. (R. 1, PageID# 3, ¶¶ 16–17). In her Complaint, she identifies herself as a Black, female, lesbian with a masculine gender presentation. *Id*. ¶¶ 18–21.

Plaintiff was involved in a car accident prior to her employment, which she avers affects her ability to stand/walk for long periods, and for which she has sought medical treatment. *Id*. at

¶¶22-23, 26.[1] Plaintiff told Defendant she could not stand for long periods of time, and approximately two months after she was hired, she requested an accommodation from Michael Hughes, Jr., the General Manager where she worked, and from Carolyn Last Name Unknown ("LNU"), the Assistant General Manager where she worked. (R. 1, ¶¶28, 37-39). Nevertheless, the Complaint alleges that Plaintiff "was still able to perform the essential functions of her job with or without reasonable accommodations." *Id.* at ¶30. Plaintiff requested to either be permitted to sit occasionally or to be transferred to a secretary position that would allow her to sit throughout her shift.[2] *Id.* at ¶40. Although Plaintiff asserts her requested accommodation was denied, the Complaint concedes she was transferred "to closing shifts only and permitted her to sit down while working on closing shifts." (R. 1, ¶¶48-52).[3]

The Complaint alleges that following her October 2024 disability accommodation request, Defendant "began to target her with discipline," but the Complaint fails to offer any facts to support such an inference. (R. 1, ¶55). Despite the alleged targeting, on or about October 22, 2024, General Manager Hughes ostensibly told Arnold that she was "supervisor material." *Id.* at ¶59. The Complaint also makes the assertion that in October of 2024, Plaintiff began "observing a hostile and racially discriminatory work environment at Shangri La." (R. 1, ¶32). No facts are alleged to support such an inference. Defendant employed "twelve Caucasian coworkers and seven Black coworkers, including a Black inventory supervisor." (R. 1, ¶33). The Complaint also asserts that Defendant "showed favoritism toward Caucasian employees, including preferential

[1] The Complaint contains no factual allegations identifying the medical conditions caused by the car accident, or the manner in which she is limited (*i.e.* pain, limited mobility, etc.).
[2] The Complaint does not allege any facts suggesting that she was qualified for a secretary position, only that such a position was "open and available." (R. 1, ¶44).
[3] Plaintiff complains that the closing shift accommodation resulted in a substantial decrease in her weekly hours from 30 to 9. (R. 1, ¶53).

treatment in rule enforcement, discipline, and communication," and that Plaintiff "was subjected to harsher scrutiny compared to her white coworkers despite working diligently." *Id*. at ¶¶34-35. Again, the Complaint contains no facts to support these conclusory statements. It does make assertions that Plaintiff "complained" about gender and race discrimination (¶¶ 187, 202, 208, 227) and disability discrimination (¶¶121, 155, 218). Again, no facts are alleged and there is no substance to Plaintiff's alleged complaints that would allow the Court to make the necessary inferences that any of these complaints involved race, gender/sex, or disability. The Complaint also does not identify to whom such complaints were made.

Over a month later, on or about November 29, 2024, Plaintiff visited the Shangri La as a customer on her day off from work. (R. 1, ¶60). Plaintiff alleges that Carolyn LNU "interacted with Arnold in a hostile, dismissive, and unprofessional manner." *Id*. at ¶61. Again, the Complaint lacks any factual allegations supporting its vague assertions. Other employees who were present, unidentified in the Complaint, told Plaintiff that it was "Carolyn LNU, not Arnold, [who] behaved in a hostile and demeaning manner." *Id*. at ¶63. The next day, Hughes allegedly informed Arnold that he had learned about the "interaction between Arnold and Carolyn LNU on November 29, 2024," but stated she would not be disciplined. *Id*. at ¶65.

Nevertheless, approximately seven days later, Hughes terminated Plaintiff's employment, and Carolyn LNU was alleged to be involved in the decision. (R. 1, ¶¶68-69). "Hughes cited the incident between Carolyn LNU and Arnold on November 29, 2024, as the reason for termination." *Id*. at ¶70. The Complaint states that Plaintiff "learned that Carolyn LNU claimed she did not feel safe working with Arnold due to her masculine appearance." *Id*. at ¶71. It is alleged that Defendant had a progressive discipline policy at the time of terminating Plaintiff's employment but did not use it. *Id*. at ¶¶75-83.

**IV. Analysis**

At the outset, the Court notes that there is some disagreement in the parties' briefs as to the applicability, if any, of the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff correctly avers that she need not allege facts establishing a *prima facie* case of race, gender/sex, or disability discrimination to survive a motion to dismiss under Rule 12(b)(6). (R. 10, PageID# 77-80). In its reply, Defendant concedes that Plaintiff need not establish a *prima facie* case under *McDonnell Douglas* in order to survive a motion to dismiss, but insists that the elements of the asserted causes of action are still germane to the evaluation of whether a plaintiff has pleaded enough factual material to render her claims plausible. (R. 11, PageID# 86-88). The Court partially agrees with this assessment of the law as well.

Another district court within the Sixth Circuit has succinctly addressed this issue, and the Court agrees with its analysis:

> [T]his is a Motion to Dismiss, and not a motion for summary judgment, Plaintiff is not required to carry a burden of presenting evidence establishing a prima facie case under *McDonnell Douglas*. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 510-11 (2002). "[T]he precise requirements of a *prima facie* case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted).
>
> This only stands to reason. After all, the *McDonnell Douglas* framework contemplates that a defendant can, if necessary, attempt to prevail by setting forth its position on a factual issue (*i.e.*, as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). 411 U.S. at 802. But except perhaps in a very limited sense (as for example when a district court will consider, if uncontradicted in a plaintiff's reply brief, a defendant's factual

> assertions as to the content in a document referred to in the plaintiff's complaint) a defendant's position regarding the facts simply is not be considered on a Rule 12(b)(6) motion to dismiss. *See Burns v. United States*, 542 F. App'x 461, 466-67 (6th Cir. 2013). Therefore, the *McDonnell Douglas* framework does not apply on this Motion, and Plaintiff is not required here to make out a *prima facie* case as required by *McDonnell Douglas* on a motion for summary judgment; instead Plaintiff must satisfy the plausibility requirement for a motion to dismiss.
>
> ***
>
> > Thus, although the Amended Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, 129 S. Ct. 1937, that [Defendant] "discriminate[d] against [Keys] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." ... According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.
>
> [*Keys*], 684 F.3d at 610 (some internal citations omitted). In *James v. Hampton*, 592 F. App'x 449 (6th Cir. 2015), the Sixth Circuit indicated that a plaintiff must plead 1) membership in the protected class, 2) specific adverse employment actions taken against the plaintiff, and 3) instances in which the plaintiff was treated less favorably than others not in the protected class. *Id*. at 461 (discussing *Swierkiewicz* and *Keys*). From the facts in the complaint, a court should be able to draw a "reasonable inference of discrimination." *Id*.; *see also Bolden v. Lake Cty. Bd. of Educ.*, 2020 WL 1163938, at *2 (W.D. Tenn. Feb. 13, 2020), *report and recommendation adopted*, 2020 WL 1159760 (W.D. Tenn. Mar. 10, 2020).

*Jodry v. Fire Door Sols., LLC*, No. 3:20-CV-00243, 2020 WL 7769924, at *3–4 (M.D. Tenn. Dec. 30, 2020) (footnotes omitted); *accord Holland v. LG Electronics U.S.A., Inc.*, 2021 WL 130529 (M.D. Tenn. Jan. 14, 2021) ("though careful not to impose excessive requirements for a plaintiff merely [to] state a Title VII claim, the Sixth Circuit does require factual matter and nonconclusory allegations suggesting that the plaintiff was treated disparately based on her belonging to a protected class").

Applying these standards, the *Holland* court found that a complaint's allegations of a

hostile work environment were insufficient where the plaintiff made "only the conclusory allegations that she was harassed by younger and non-white co-workers and managers, that racism and ageism were embedded and tolerated within Defendant's organization, and that Defendant created a hostile work environment." *Id*. at *6. That court found it significant that the plaintiff did "not identify (in any manner whatsoever) any harasser, describe any example(s) of harassment, or provide any explanation as to how the alleged racism and ageism manifested itself in a hostile work environment. This is another classic example of a claim that is insufficient under *Iqbal* and *Twombly*[.]" *Id*.

The Court turns to addressing whether Plaintiff has alleged sufficient factual matter to state plausible claims.

**A. Counts One, Two, Seven and Eight: Race and Gender Discrimination Claims**

Plaintiff alleges race discrimination claims in Counts One and Two under Title VII and Ohio law respectively; and gender discrimination claims under Counts Seven and Eight under federal and Ohio law respectively. (R. 1).[4] Although Defendant concedes that Plaintiff belongs to a protected class, as she is Black and female, Defendant asserts that the Complaint "identifies no specific employees, no comparable conduct, and no examples of differential treatment. She does not allege that any similarly situated employee engaged in similar behavior and was retained or disciplined differently." (R. 9-1, PageID# 58).

Title VII makes it "an unlawful employment practice for an employer ... to discriminate

[4] "Because the elements and legal standards for establishing unlawful employment discrimination are the same under both Ohio law and Title VII, we need not analyze [a plaintiff's] state and federal discrimination claims separately." *Overall v. RadioShack Corp.*, 202 F. App'x 865, 867 (6th Cir. 2006); *accord Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1101 (S.D. Ohio 2021); *Hollins v. Cuyahoga Cnty. Div. of Senior & Adult Servs.*, No. 1:17-CV-965, 2017 WL 6374064, at *4 (N.D. Ohio Dec. 13, 2017) (Gwin, J.).

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff responds that, with respect to her race discrimination claims, the Complaint "details a racially hostile environment in which white employees received preferential treatment in discipline, communication, and enforcement of rules," that "[she] was subjected to heightened scrutiny, despite meeting the expectations of her role," that Defendant maintained a progressive discipline policy, but it was not applied to her as it was to similarly situated white employees; and that "[s]he was ultimately terminated without just cause, while non-Black employees who engaged in comparable or more serious conduct were retained." (R. 10, PageID# 81). The Court disagrees. The Complaint only makes conclusory statements and naked assertions bereft of any facts. The Complaint sets forth no factual averments from which a court, through its "judicial experience and common sense," could draw the reasonable inference that a hostile work environment existed, that Black employees were treated differently than Caucasian employees, or that discipline was disparately meted out. The Complaint is unable to muster a single, solitary example illustrative of her claims. Thus, the Complaint is precisely the type of formulaic, conclusory pleading that is insufficient under *Iqbal* and *Twombly*.

With respect to her gender discrimination claims, Plaintiff merely reiterates that she "identifies as a lesbian woman who presents with a masculine gender expression." (R. 10, PageID# 83). As with her claims of racial discrimination, Plaintiff makes the formulaic assertion that "she was treated differently than other female employees who conformed to more traditionally feminine norms." *Id*. There are no factual allegations in the Complaint that support

this assertion, just more labels and naked assertions.[5] The only actual factual allegation that Plaintiff identifies is Carolyn LNU's purported statement that she did not feel safe working with Arnold due to her masculine appearance. (R. 10, PageID# 83, citing R. 1, ¶71). The Court finds that this factual allegation, standing alone, is insufficient to state a plausible claim of gender discrimination. There are no other similar factual allegations, and by itself, it does not give rise to the reasonable inference that Plaintiff was terminated and/or disciplined due to her "masculine presentation."

"[C]onclusory statements, unsupported by underlying fact, that [a plaintiff was] targeted … for his nonconformance with gender norms, subjected him to hostile work conditions, and discriminated against him based on his sex and gender identity" are "bare legal conclusions [that] are insufficient to state a claim…." *Lee v. Am. Homes 4 Rent, L.P.*, 2022 WL 1785448, at *6 (D. Nev. May 31, 2022). Further, "[t]he Sixth Circuit has found 'even offensive and bigoted conduct [to be] insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough to satisfy the claim's requirements.'" *Mack v. Wayne Cty. Cmty. Coll.*, No. 18-13986, 2020 U.S. Dist. LEXIS 88860, at *15 (E.D. Mich. May 19, 2020) (*quoting Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017)). While the Court recognizes this is not a hostile work environment claim, the single, alleged comment by Carolyn LNU simply does not give rise the reasonable inference that Plaintiff was terminated, at least in part, due to her gender or a non-gender conforming appearance. Furthermore, courts have found that a complaint fails to state a

[5] Plaintiff is correct that "Title VII proscribes discrimination both against women who 'do not wear dresses or makeup' and men who do…. [and that] '[s]ex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination.'" *EEOC v. R.G.*, 884 F.3d 560, 572 (6th Cir. 2018). Nevertheless, the Court does not construe Defendant as moving for dismissal on this basis, but rather due to the paucity of the factual allegations in the Complaint.

disparate treatment claim where the complaint fails to "even generally describe any comparator employees, how they were similarly situated, or how they were treated differently than Plaintiff. Other courts in this District and elsewhere have not hesitated to dismiss disparate treatment Title VII claims with comparable pleading deficiencies." *Harris v. Mayorkas*, 2022 U.S. Dist. LEXIS 147683, at *16-17 (D.D.C. Aug. 18, 2022) (collecting cases).

In *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013), the Sixth Circuit affirmed that a complaint lacked plausible factual allegations where an individual alleged that he suffered ethnic origin discrimination and that, "upon information and belief," other similarly situated borrowers were treated more favorably. The Sixth Circuit explained that "[t]hese are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency…. the plaintiffs have not identified any similarly situated individuals whom *Flagstar* treated better. They have merely alleged their 'belief' that such people exist. These 'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *Id*.

In *Bender v. Gen. Dynamics Land Sys.*, No. 2:19-cv-13177, 2020 U.S. Dist. LEXIS 134825, at *16-17 (E.D. Mich. July 30, 2020), another district court within the Sixth Circuit observed that the plaintiff failed to identify similarly situated employees, did not state whether they occupied the same position; dealt with the same supervisor; or engaged in conduct similar to plaintiff, and, therefore, she failed to properly allege that she was subjected to "employment conditions significantly different from those experienced by other similarly situated employees who are not African American, or women." Similarly, in *Coleman v. JPMorgan Chase Bank, N.A.*, 2018 U.S. Dist. LEXIS 199990, at *9 (W.D. Ky. Nov. 27, 2018), the plaintiff, much like Plaintiff herein, "merely casts a blanket statement that Defendant treated others differently."

While recognizing that factual allegations of disparate treatment of similarly situated individuals could create an inference in support of a discrimination claim, it found that "[s]uch allegations … must be supported by something other than the plaintiff's unsubstantiated suppositions." *Id*. Here too, Plaintiff's labels of discriminatory or disparate treatment of unidentified individuals without any factual matter—such as examples of the offending behavior or disparate discipline—are insufficient.

In sum, Plaintiff has not plausibly alleged that Defendant terminated her, or treated her differently, than other employees due at least in part to her race and/or gender/sex. While the Complaint contains conclusory assertions that she was treated differently or was terminated because she was Black, a lesbian, and/or a woman who presented with a masculine appearance, there is no factual matter in the Complaint to support Plaintiff's naked assertions. Simply put, Plaintiff has failed to plead facts—not conclusions, labels, or formulaic recitation of the elements—plausibly suggesting she was terminated or discriminated against due to her race or gender. Counts One, Two, Seven and Eight are, therefore, dismissed.

**B. Counts Three and Five: Disability Discrimination Claims**

Plaintiff alleges a disability discrimination claim under both federal law and Ohio Revised Code § 4112.01 *et seq*. Plaintiff has advanced a theory that she suffered disability discrimination because she was "treated … differently than other similarly-situated employees based on her disabling condition" and that she was terminated because of her disability. (R. 1, ¶¶86, 119-120, 125-26, 153). Ohio state law claims for disability discrimination are analyzed under the same framework as federal claims asserted under the ADA. *Jakubowski v. Christ Hospital. Inc.*, 627 F.3d 195, 201 (6th Cir. 2010).

Defendant's motion to dismiss asserts that Plaintiff has failed to plead facts to support a

plausible claim of disability discrimination. (R. 9-1, PageID# 59-62). The ADA bars employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 363 (6th Cir. 2007), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). A successful showing of discriminatory discharge under the ADA requires proof of three elements: 1) that the plaintiff was "disabled"; 2) that the plaintiff is qualified and able to perform the essential functions of the job; and 3) that the employer terminated the defendant because of the disability.[6] *Bailey v. Real Time Staffing Servs.*, 543 F. App'x 520, 523 (6th Cir. 2013).

Defendant argues that the Complaint fails to plausibly allege that she has a disability as defined by the ADA or O.R.C. § 4112. (R. 9-1, PageID# 60). The Court agrees. "Even though a plaintiff bringing a discrimination claim is not required to make out a full prima facie case at the motion to dismiss stage, she must identify her alleged disability in the Complaint—or at least offer facts from which the disability can be ascertained. A plaintiff's ability to show that she is disabled is 'a threshold requirement.'" *Jaleelah Ahmed v. Sch. Dist.*, No. 2:22-cv-11127, 2024 U.S. Dist. LEXIS 169748, at *12-13 (E.D. Mich. Aug. 26, 2024) (*quoting Burns v. Coca-Cola Enters*., 222 F.3d 247, 253 (6th Cir. 2000)).

The Complaint's failure to allege facts identifying her disability as anything more than an inability to stand/walk for long periods is insufficient. (R. 1, ¶¶22-29). The Complaint's

---

6 A "but-for" causality standard applies to ADA claims rather than the more stringent "sole-cause" standard that applies to Rehabilitation Act claims. *Bledsoe v. Tennessee Valley Auth. Bd. of Directors*, 42 F.4th 568, 579 (6th Cir. 2022).

recitation of the elements of the offense are insufficient. It is not enough for her to allege that she is "disabled within the meaning of the ADA" or the Ohio Revised Code, or that she was in a car accident that "substantially impairs one or more of her major life activities including standing, walking, and working." *Id.* at ¶¶22-25. *See Al-Janabi v. Wayne State Univ.*, No. 21-1399, 2021 U.S. App. LEXIS 37051, at *5 (6th Cir. Dec. 15, 2021) (affirming dismissal of ADA claim where the plaintiff failed to identify his disabilities or how they substantially impaired a major life activity); *Inman v. Edwin Shaw Rehab, LLC*, 2013 U.S. Dist. LEXIS 160153, 2013 WL 5966177, at *3 (N.D. Ohio Nov. 8, 2013) (allegation that plaintiff was "an individual diagnosed with a psychological impairment that substantially limits one or more major life activities" deemed insufficient); *Andrews v. Eaton Metal Prods*., 2020 U.S. Dist. LEXIS 181828, at *18–19 (D. Colo. Sept. 8, 2020) ("pregnancy and a non-descript car accident, standing alone, do not fall under the scope of the ADA"); *Garey v. Wal-Mart Stores E., LP*, 2016 U.S. Dist. LEXIS 55170, at *16 (D. Md. Apr. 25, 2016) (finding that "the conclusory allegation" that pain substantially limits plaintiff's ability to walk, bend, and lift is "merely a formulaic recitation of the elements of the claim, rather than a specific factual allegation that creates a plausible cause of action"); *McDonald v. Glanz*, 2013 U.S. Dist. LEXIS 4678, at *8 (N.D. Okla. Jan. 10, 2013) ("Plaintiff's petition alleges plaintiff has an impairment and is limited in major life activities such as walking and standing. However, it fails to describe with any particularity the impairment or disability alleged"); *Beckford v. Elevance Health, Inc.*, 2024 U.S. Dist. LEXIS 155041, at *22 (E.D. Va. Aug. 28, 2024) (dismissing ADA claim where plaintiff failed to identify a diagnosis or explain how impairment limited any major life activity). Plaintiff's cryptic allegations that she has "a record of disability" or sought medical treatment does not salvage her claim. *Id.* ¶¶26-27.

Plaintiff's alternative allegation—that she is perceived as disabled—is nothing more than

a legal conclusion or a naked assertion bereft of any factual material to support it. (R. 1, ¶29).

Plaintiff counters that "[n]o magic words or diagnoses are required. Arnold explicitly identifies the limitations on major life activities and the adverse action that followed disclosure of her condition. These allegations track directly with the elements of a viable disability discrimination claim under both statutory schemes." (R. 10, PageID# 82). The Court disagrees, as Plaintiff's allegations contain little to no facts. The Complaint simply concludes that elements of her cause of action are satisfied by using labels drawn straight from the ADA or caselaw with no supporting factual averments. Further, Plaintiff fails to identify any law herself that supports her position that Defendant has mischaracterized the law. *Id*.

Even assuming *arguendo* that Plaintiff has sufficiently identified a disability, the Complaint still fails to state a viable claim of disability discrimination. Defendant correctly argues that Plaintiff has failed to allege any facts—versus formulaic conclusions—that she was treated less favorably than non-disabled co-workers. She also offers no factual averments to buttress her allegation that she was terminated because she was disabled. She does not point to a single factual allegation—not a non-disabled employee being treater better, replacement by a non-disabled employee, disparaging remarks about her alleged disability or its concomitant limitations—from which a court, through its "judicial experience and common sense," could draw the reasonable inference that she was terminated or discriminated against due in part to her disability.

Again, Plaintiff has not plausibly alleged that Defendant terminated her or treated her differently than other employees because of her alleged difficulty standing. As recounted above, the Complaint is full of conclusory assertions that she was treated differently, but there is a complete dearth of any factual matter to support them. As noted in the section above, Plaintiff

has failed to plead facts. Plaintiff attempts to portray the Complaints' conclusions, labels, or formulaic recitation of the elements as factual averments, but that is not persuasive. Limiting the Court's consideration to factual allegations, none of the facts alleged, either alone or in combination, plausibly suggest Plaintiff was terminated or discriminated against due to an actual or perceived disability. Counts Three and Five are, therefore, dismissed.

**C. Counts Four and Six: Failure to Accommodate**

Plaintiff also asserts a failure to accommodate a disability claim under both the ADA and O.R.C. § 4112.01 *et seq*. (R. 1).

> [I]n the context of a failure to accommodate claim, "to survive the motion to dismiss for failure to state a claim, [a plaintiff] must allege sufficient facts for the [c]ourt to draw the reasonable inference … that the [defendant] failed to reasonably accommodate [the plaintiff's] disability." *Gryder*, 2022 WL 602330, at *5. Simply put, a plaintiff is still required to plead an ADA claim "supported by enough facts to meet the basic pleading requirements of Federal Civil Procedure Rule 8" as opposed to "conclusory allegations that form a '[t]hreadbare recital[ ] of the elements' of a failure to accommodate claim." *Longstreet v. Industrial Com'n of Ohio*, 2015 WL 2238628, at *3 (N.D. Ohio May 12, 2015); *Eachus v. Haslam*, 2016 WL 323675, at *8 (M.D. Tenn. Jan. 27, 2016); *see also Baldwin v. Cole*, 2025 WL 2108186, at *4 (S.D. Ohio July 28, 2025) ("Plaintiff need not plead each element of a prima facie ADA claim to survive the initial screen but is still required to satisfy Rule 8 pleading standards.").
>
> In making this evaluation, "when determining the sufficiency of a pleading at the motion to dismiss stage, courts still look to prima facie showing requirements for guidance." *Hamilton*, 2021 WL 1759859, at *4; *Sloan v. Earnest*, 2024 WL 2882594, at *3 (W.D. Mich. May 20, 2024). And while a plaintiff need not establish every element of a prima facie case, courts have often found complaints to fall short of Rule 8 for ADA claims where they do not plead any factual details as to the accommodations requested. Contrarily, pleading factual details as to the accommodations requested will often be sufficient to survive a motion to dismiss.

*Lonergan v. Gallagher Sharp, LLP*, No. 1:24-CV-02067. 2025 WL 2578155, at *3 (N.D. Ohio Sept. 5, 2025) (Barker, J.) (footnotes omitted).

First, as discussed above, Plaintiff has not sufficiently pleaded that she was disabled. This

is fatal to her failure to accommodate claim as well. Nevertheless, even if she managed to overcome that hurdle, the Complaint would still fail to state a claim. "The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011). The Complaint alleges that Plaintiff requested she be allowed to sit occasionally during her shifts as a Patient Consultant *or* to be reassigned to an open secretary position that would allow her to sit throughout the day. (R. 1, ¶40).

With respect to the request that she be permitted to sit occasionally, Plaintiff uses conclusory language masquerading as a factual allegation that her request was "reasonable," that it would not have posed an "undue hardship" to defendant, and that she could "perform her essential job functions" while sitting occasionally. *Id*. at ¶¶ 41-43. Tellingly, Plaintiff fails to offer any factual allegations concerning her job duties as a Patient Consultant from which the Court could infer that the request was reasonable. As Defendant points out, there are no factual allegations addressing whether sitting occasionally would have impacted customer service, safety, or essential job functions. Plaintiff's brief in opposition is as conclusory as her Complaint, and asserts that both requested accommodations "were feasible, posed no undue hardship, and would have enabled her to perform her essential job functions." (R. 10, PageID# 82-82). She fails to identify any factual allegations supporting these assertions, and merely cites the naked assertions and labels in her Complaint. *Id*.

Turning to her request to fill an open secretary position (R. 1, ¶¶ 44-46), the Complaint alleges no facts about the job's duties, and, more importantly, whether she was qualified for that position. Ultimately, "it is the plaintiff's burden to identify available positions *and* to

demonstrate that she was qualified for those positions." *Thomas v. District of Columbia*, 2023 U.S. Dist. LEXIS 49756, at *16 (D.D.C. Mar. 23, 2023) (emphasis added) (dismissing, for failure to state a claim, a failure to accommodate claim that did not sufficiently allege the plaintiff was qualified for a reassignment).

The case at bar is also analogous to a case cited by Defendant from the Western District of Pennsylvania:

> [P]laintiff failed to plead the name of her disability, the essential functions of her position, the type of accommodation she requested, why her requested accommodation would have been reasonable or why such an accommodation would have enabled her to perform the essential functions of her employment, the manner in which she was retaliated against, the type and nature of the harassment she claims to have suffered, or any other required element of her claims. Without these basic facts, plaintiff cannot satisfy the pleading requirements of Rule 8(a) and her complaint fails to state a claim upon which relief can be granted.

*Ward v. City of Erie Sch. Dist.*, 2014 U.S. Dist. LEXIS 16104, at *7 (W.D. Pa. Feb. 10, 2014). Although Plaintiff herein did identify the accommodation requested, the Complaint is similarly deficient in all other aspects. *See also Andrews v. Highmark Health*, 2022 U.S. Dist. LEXIS 193806, at *19 (W.D. Pa. Oct. 25, 2022) (dismissing ADA claim, for failure to state a claim, where the Complaint "contain[ed] no allegations about the position, its essential functions, or her ability to perform such functions.").

Finally, although the Complaint states that Defendant failed to enter into an interactive process (R. 1, ¶141), "an employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (citing *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1231 (10th Cir. 2009)). Even so, Plaintiff's allegation is not plausible. The Complaint acknowledges that in response to her request for an

accommodation, Defendant transferred Plaintiff to closing shifts that permitted her to sit while working. (R. 1, ¶ 52). That this accommodation was not her requested preference is immaterial. "[U]nder the ADA a qualified individual with a disability is 'not entitled to the accommodation of her choice, but only to a reasonable accommodation.'" *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (citations omitted). While the Complaint states that this shift in schedule resulted in her hours decreasing from 30 hour per week to 9, the Complaint fails to allege that Plaintiff informed her employer that she was dissatisfied with this accommodation. Thus, it is implausible to allege the employer failed to engage in the interactive process when the Complaint does not allege any factual allegations that support the inference that further discussion concerning accommodations were ever requested.

Because the Complaint fails to set forth factual material that could plausibly support a failure to accommodate claim, Counts Four and Six are dismissed.

**D. Counts Nine, Ten, and Eleven: Retaliation Claims**

In Count Nine, Plaintiff asserts she was retaliated against for making complaints about "the gender and race discrimination she was experiencing" in violation of Title VII (R. 1, ¶208); in Count Ten, Plaintiff asserts she was retaliated against for making complaints about "the disability discrimination she was experiencing" in violation of the ADA (R. 1, ¶217); and, in Count Eleven, Plaintiff asserts she was retaliated against for making complaints about "the gender/sex and disability discrimination she was experiencing" in violation of O.R.C. § 4112.01 *et seq*. (R. 1, ¶227).

"To state a claim of retaliation under Title VII, a plaintiff must allege that: (1) he acted in a manner protected by Title VII; (2) the defendant knew of this exercise of protected activity; (3) the defendant subsequently took an adverse action against him; and (4) the adverse action had a

causal connection to the protected activity." *Hood v. City of Memphis Pub. Works Div.*, 2018 WL 2387102, at *5 (W.D. Tenn. Jan. 8, 2018), *report and recommendation adopte*d, 2018 WL 648377 (W.D. Tenn. Jan. 31, 2018) (citations omitted).[7] The elements of a disability retaliation claim under the ADA and Ohio law are largely the same as under Title VII. *See, e.g., Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014); *Green v. Bakemark USA, LLC*, No. 1:13-CV-841, 2016 WL 258345, at *15 (S.D. Ohio Jan. 20, 2016) (noting that plaintiff's disability retaliation claim was pleaded under Ohio law, but that "state courts may look to federal case law regarding cases involving alleged retaliation"), *aff'd*, 683 Fed. App'x 486 (6th Cir. 2017).

Defendant's motion to dismiss argues it is entitled to dismissal in its favor on the retaliation claims because: (1) the Complaint fails to plausibly allege that Plaintiff engaged in protected activity;[8] and, (2) the Complaint fails to allege any factual matter that supports causation between the protected activity and an adverse employment action. (R. 9-1, PageID# 66-68). The Court agrees on both counts.

First, the Complaint provides no *factual* allegations from which the Court could infer that Plaintiff engaged in protected activity. To be sure, the Complaint alleges in a purely conclusory manner that Plaintiff reported race, gender/sex, and disability discrimination. These labels, however, are insufficient. At best, given the stage of the proceedings, the Court may be bound to accept the allegation that Plaintiff voiced some complaints. However, without any factual

---

[7] "Ohio law claims for retaliation are analyzed under the same standard as Title VII claims." *Marshall v. Belmont Cnty. Bd. of Comm'rs*, 110 F. Supp. 3d 780, 801 (S.D. Ohio 2015), *aff'd*, 634 F. App'x 574 (6th Cir. 2016).

[8] "[T]here are two types of 'protected activity' for purposes of a Title VII retaliation claim: (1) 'oppos[ing] any practice made an unlawful employment practice' by Title VII, and (2) making a charge, testifying, assisting, or participating in an 'investigation, proceeding, or hearing' under Title VII. 42 U.S.C. § 2000e-3(a)." *Hood*, 2018 WL 2387102, at *5.

averments, the Court cannot accept at face value that these complaints were plausibly based on race, gender/sex, or disability. As discussed above, the record is devoid of any factual material identifying statements, incidents, occurrences, actions, etc. from which the Court, informed by its judicial experience and common sense, could draw the reasonable inference that any of the "reporting" by Plaintiff actually constituted protected activity.

The Court could end its analysis with respect to the retaliation claims here. Nevertheless, the Court alternatively finds that, even if the Complaint were deemed to have sufficiently alleged that Plaintiff engaged in protected activity, the Complaint is bereft of any factual allegations that could plausibly connect the protected activity with Plaintiff's termination or some other adverse action. Thus, the requisite causal connection between the protected activity and the adverse action lacks any factual enhancement. Again, Plaintiff simply reiterating the elements of a claim and stating that her termination was "retaliatory" is not enough. The retaliation claims, like all the others before it, amount to little more than formulaic recitations of the elements of each cause of action, completely devoid of any factual descriptions or enhancement.

Because the Complaint fails to set forth factual material that could plausibly support the retaliation claims, Counts Nine, Ten, and Eleven are dismissed.

## V. Conclusion

Defendants' Motion to Dismiss (R. 9) is GRANTED, and this matter is hereby DISMISSED in its entirety.

IT IS SO ORDERED.

Date: September 1, 2026

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge